**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 1:25-cr-02739-KWR-1

GABRIEL MORALEZ,

Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S OBJECTION TO THE PRESENTENCE INVESTIGATION REPORT**

**THIS MATTER** comes before the Court on Defendant's Objections to the Presentence Investigative Report ("PSR"). **Doc. 46 at 1–7**. (Objections to the PSR). Defendant objects to the application of U.S.S.G. § 3C1.2 for reckless endangerment during flight, which provides for a two-point enhancement.[1] ***Id.***

Having reviewed both parties' briefing and the applicable law, the Court finds that Defendant's Objection is not well-taken and, therefore, is **DENIED**.

**BACKGROUND**

This case arises out of Defendant's armed robbery of a Circle K convenience store on the afternoon of June 15, 2025. **Doc. 51 ¶ 11** (PSR). Albuquerque Police Department ("APD") officer responded to the store after dispatch advised that two employees, John Doe and Jane Doe, were robbed at gunpoint. ***Id.*** Victims identified the suspect as a Hispanic male, approximately 30 years

[1] Defendant's brief is entitled Objections to the PSR because it also contains a separate, abbreviated request for "amendment correction, or clarification to the [PSR]." **Doc. 46 at 7** (quote modified). Defendant contends that paragraphs 14 and 20 of the initial PSR did not accurately reflect the record. ***Id.*** The PSR has since been modified, and the updated PSR reflects Defendant's contentions. ***Id.***; ***see generally*** **Doc. 51**.

old, 4'11" tall, and wearing a face covering. ***Id.*** The suspect, soon identified as Defendant, fled on foot and the victims were unsure of his direction of flight. ***Id.*** **¶ 12**. Defendant was a convicted felon at the time of the incident. ***Id.*** **¶ 19**.

John Doe reported that Defendant threatened him by pointing a firearm directly at him. ***Id.*** **¶ 13**. The responding officer reviewed surveillance footage, which showed Defendant approaching the store wearing a bandana around his face. ***Id.*** **¶ 14**. John Doe stated that he intercepted Defendant at the entrance and informed Defendant that he could not enter while wearing a face mask. ***Id.*** Defendant refused to comply and brandished a pistol, which he pointed at John Doe and then gestured toward the cash register, demanding the money from within it. ***Id.*** John Doe followed Defendant's instructions, walking to the register as Defendant followed. ***Id.*** Jane Doe reported that she was on a phone call when the incident began and Defendant pointed the pistol at her, as well, and demanded that she hang up. ***Id.*** John Doe and Jane Doe opened the register and Defendant retrieved around $140—he also took approximately eight packs of Marlboro cigarettes. ***Id.*** "The footage showed [Defendant] armed with a black pistol, with his finger on the trigger." ***Id.***

After Defendant fled, an electronic tracking device attached to the stolen money led officers to a residential area. ***Id.*** **¶ 15**. Officers located Defendant, whose location was consistent with the tracking device, and covertly surveilled him because he matched the victim's description of the suspect. ***Id.*** After officers made contact with Defendant, he fled on foot, "ignoring verbal commands to stop and lie on the ground." ***Id.*** **¶ 16**. Officers initially fired nonlethal rounds, but he continued to flee. ***Id.*** Upon observation that Defendant was holding a pistol in his hand, the "officers transitioned to lethal rounds and shot at him at least once." ***Id.*** The bullet rounds caused a minor gunshot wound to his right hip. ***Id.*** **¶ 17**. Defendant concealed himself in a bush, later

emerging and jumping over a nearby fence. ***Id.* ¶ 16**. Officers located Defendant soon after, who "advised he was ready to surrender." ***Id.*** Defendant was later medically cleared that same day and booked into jail. ***Id.* ¶ 17**.

Later that same "evening, the tracking device, along with [D]efendant's backpack, were located in a backyard." ***Id.* ¶ 18**. Search of the backpack produced cash and a Circle K bag. ***Id.*** Officers also found the pistol in the same area where Defendant jumped the fence. ***Id.*** The next day, pistol identification showed the owner to be Defendant's father. ***Id.* ¶ 19**. Additionally, "[t]he pistol was test-fired and functioned as designed. ***Id.*** Upon recovery, the pistol was loaded and had a round in the chamber. **Doc. 49 at 2** (Addendum to PSR).

## LEGAL STANDARD

"[A] defendant does not 'dispute' a PSR's recitation of facts underlying his arrests unless he presents 'information to cast doubt on' the facts." *United States v. Warren*, 737 F.3d 1278, 1285–86 (10th Cir. 2013) (citing *United States v. Yates*, 22 F.3d 981, 989 (10th Cir.1994)). "If a PSR is not disputed in this fashion, it is well established that a district court is free to rely on the PSR at sentencing." *Warren*, 737 F.3d at 1286; *see also United States v. Tindall*, 529 F.3d 1057, 1064 (10th Cir. 2008); see also Fed. R. Crim. P. 32(i)(3). "In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3 (2025).

## DISCUSSION

Defendant's objects to the PSR on the ground that it is improper, as to the facts of this case, to apply an enhancement under § 3C1.2 for reckless endangerment during flight. Defendant's

objection is unpersuasive. The Government rightly seeks, and the USPO properly applied, a Guidelines calculation under § 3C1.2 for reckless endangerment during flight. Defendant mischaracterizes both the facts and the applicable case law to qualify his conduct as not having presented a substantial risk of serious bodily harm or death to others. Indeed, Defendant's conduct, by a preponderance of the evidence, manifested a substantial risk to others: Defendant did not merely flee with a firearm in his possession, Defendant fled from a residential area, while chased by officers, with a loaded, functioning pistol, which he wielded in his hand at least during part of his flight before discarding the pistol. ***See* Doc. 51 ¶¶ 14–16, 19**.

The Sentencing Guidelines provide that "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." U.S.S.G. § 3C1.2. The application notes provide guidance on definitions and when to apply the enhancements:

> 1. Do not apply this enhancement where the offense guideline in Chapter Two, or another adjustment in Chapter Three, results in an equivalent or greater increase in offense level solely on the basis of the same conduct.
>
> 2. "Reckless" is defined in the Commentary to section § 2A1.4 (Involuntary Manslaughter). For the purposes of this guideline, "reckless" means that the conduct was at least reckless and includes any higher level of culpability.
>
> 3. "During flight" is to be construed broadly and includes preparation for flight. Therefore, this adjustment also is applicable where the conduct occurs in the course of resisting arrest.
>
> 4. "Another person" includes any person, except a participant in the offense who willingly participated in the flight.
>
> 5. Under this section, the defendant is accountable for the defendant's own conduct and for conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused.

U.S.S.G. § 3C1.2 n. 1–5. Further defined,

> "Reckless" means a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.

U.S.S.G. § 2A1.4 n.1.

Defendant objects to the Guidelines calculation in the PSR on the grounds that there is insufficient evidence to support the finding that his conduct recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer" under U.S.S.G. § 3C1.2. **Doc. 46 at 1–7**. Specifically, Defendant argues that the evidence is inadequate to prove that his "possession of a firearm during flight without additional conduct supporting actual reckless endangerment is insufficient to support application of the sentencing enhancement." ***Id.* at 3**. Further, Defendant argues that any danger presented to himself cannot be considered in imposing an enhancement under § 3C1.2. ***Id.* at 4–5**.

To support his position, Defendant argues that the PSR establishes only that Defendant fled on foot with a gun in his possession, which he purports precedent identifies as insufficient for a § 3C1.2 enhancement. ***Id.* at 5**. Defendant presents his conduct as essentially innocuous to bystanders, stating that officers confronted Defendant in a "large vacant dirt lot with shrubbery and bush" with "no bystanders in the immediate area." ***Id.*** Defendant contends that "[i]t was only after firing lethal rounds that the officer claimed he saw a firearm in [Defendant's] left hand." ***Id.*** Further, Defendant argues that there is "no evidence in the discovery that [Defendant] was pointing the firearm at any individual, running with his finger on the trigger, or wielding it in a threatening manner." Nor does it "appear," Defendant asserts, "that any of the other officers on the ground observed the firearm." ***Id.* at 6**. And Defendant states that "none of the officers indicated that [Defendant] had a firearm in his hand when he emerged and jumped over the fence." ***Id.*** These facts, Defendant declares, fall short for an enhancement under § 3C1.2. Defendant also attempts,

unconvincingly, to massage case law to corroborate his position that these facts cannot marshal imposing an enhancement under § 3C1.2. ***See id.* at 2–7**.

The USPO and the Government disagree. **Doc. 49 at 2–3**; **Doc. 53 at 1–3** (United States' Response to Defendant's Objection to the PSR and Sentencing Memorandum). The USPO argues, specifically, that Defendant advances cases that are inapposite to the facts at hand and do not endorse Defendant's position, but rather support applying an enhancement under § 3C1.2. ***Id.*** The Government argues that "Defendant did not simply flee with an unloaded firearm tucked in his waistband or in a backpack, examples in which armed flight might not necessarily create a reckless danger to others. Instead, Defendant had the pistol in his hand at various points during the flight, and perhaps most importantly, the firearm was loaded with multiple rounds, including one in the chamber." **Doc. 53 at 2–3**. The Government highlights that Defendant's conduct subjected officers to a manifest risk of severe bodily harm or death. ***Id.***

Although Defendant correctly identifies that the risk of harm must be presented against someone other than Defendant and that "[n]ot every flight from a crime scene . . . will constitute reckless endangerment under § 3C1.2," Defendant subjected others to a substantial risk of harm such that this is not one of those cases of innocuous flight. **Doc. 46 at 2–3** (quoting *United States v. Conley*, 131 F.3d 1387, 1390 (10th Cir. 1997); see also *United States v. Zamora*, 97 F.4th 1202, 1212 (10th Cir. 2024) ("§ 3C1.2 enhancement does not apply to a risk of injury to the defendant . . . .").

In *Zamora*, 97 F.4th at 1209 the Tenth Circuit held that "mere possession of a firearm during flight is insufficient to support application of § 3C1.2." However, myriad factors can turn mere possession of a firearm during flight into reckless endangerment. In *Zamora*, the Tenth Circuit found that imposing a sentencing enhancement under § 3C1.2 was appropriate where the

defendant fled from officers while carrying an unholstered, loaded firearm with a round in the chamber which discharged accidentally, injuring the defendant. 97 F.4th at 1204, 1213. The defendant ran through both "empty streets of a residential neighborhood" and a "commercial area" with "an occupied car" where the chase ended. *Id.* at 1204. The Tenth Circuit reached this conclusion consistent with many of its sister circuits. *See id.* at 1211–12. In *United States v. Lard*, 327 F.3d 551, 554 (7th Cir. 2022), which the Tenth Circuit cited approvingly in *Zamora*, the Seventh Circuit found that a defendant who " 'fled from law enforcement officers and tossed to the ground a loaded gun with a round in the chamber' . . . created a risk of serious injury to pursuing officers." *Zamora*, 97 F.4th at 1212 (quoting in part *Lard,* 327 F.3d at 554); *see also United States v. Brown*, 31 F.4th 39, 49 n. 13 (1st Cir. 2022) (applying § 3C1.2 because it is "reasonable to conclude that a gun that contains a bullet possess a probability of accidental firing"); *United States v. Matchett*, 802 F.3d 1185, 1189 (applying § 3C1.2 because the evidence showed "there was a significant chance that [a] firearm could have accidentally discharged"); *United States v. Kelley*, 40 F.4th 276, 285 (5th Cir. 2022) (applying § 3C1.2 because running from officers while carrying a gun "capable of discharging grossly deviates from the standard of care" of a reasonable person); *United States v. Gray*, 942 F.3d 627, 632 (3d Cir. 2019) (applying § 3C1.2 because "a loaded firearm" thrown "in the vicinity of a police officer and at least one civilian" could have "discharged when thrown").

Here, Defendant fled officers when they contacted him in a residential area, carrying a loaded pistol, which Defendant later held in his hand. **Doc. 51 ¶¶ 15–16**. When officers observed the pistol in his hand, they used lethal rounds, and Defendant hid in a bush before emerging and jumping over a nearby fence. ***Id.*** The pistol was later found in the vicinity of the fence. ***Id.* ¶ 18**. The pistol was tested and determined to function and fire. ***Id.* ¶ 19**. Thus, the facts from the PSR

indicate that Defendant fled with a loaded pistol capable of firing and at one point the pistol was drawn, all while officers pursued him. These facts alone, per *Zamora*, merit an enhancement under § 3C1.2. Either viewing—that Defendant fled with a loaded, unholstered pistol capable of firing or that Defendant later drew that loaded pistol capable of firing in his hand—tenably supports an enhancement under § 3C1.2. The standard at hand here is of a reasonable person, see § 3C1.2, and a reasonable person would comprehend that fleeing with a loaded pistol capable of firing, dashing into shrubbery, and drawing the pistol during flight engenders a substantial risk of bodily harm or death to others. Indeed, "[f]leeing on foot with a loaded firearm in hand is a highly volatile and unreasonable act that forces pursuing officers to make split-second, life-or-death decisions, drastically elevating the risk of a grim outcome." **Doc. 49 at 2**.

Beyond the risk of the pistol accidentally discharging, Defendant demonstrated a willingness to voluntarily fire his pistol. "[Defendant] fled with a firearm in his hand after already demonstrating a willingness to use it by pointing it at two store employees during an armed robbery." **Doc. 49 at 2**; ***see also* Doc. 51 ¶¶ 14**. Defendant's willingness to intentionally fire his loaded pistol independently furnishes ground to apply a § 3C1.2 enhancement. *See Zamora*, 97 F.4th at 1212 (applying a § 3C1.2 enhancement is appropriate where the defendant wielded a firearm that was "loaded and ready to fire such that *accidental or intentional* discharge was a factual possibility.") (emphasis added).

Moreover, Defendant's reckless flight began in a residential neighborhood, further supporting the imposition of a § 3C1.2 sentencing enhancement. The plain text of § 3C1.2 contemplates danger to others; naturally, where there are more civilians or bystanders, there is a greater risk to others. *See e.g.*, *United States v. Montano*, 109 F.4th 1275, 1282–83 (10th 2024) (discussing the risk to other drivers on the road during a defendant's flight from officers by car).

A residential neighborhood harbors a greater number of potential victims to Defendant's reckless conduct. The facts of the PSR indicate that officers approached the Defendant in a residential neighborhood, where they located him. **Doc. 51 ¶ 15**. Thereafter, Defendant fled on foot from officers. **Doc. 51 ¶ 16**. Thus, Defendant began his flight from officers carrying a loaded, unholstered pistol capable of firing in a residential area, where the risk to others was dramatically higher. Further, even when the Defendant reached the vacant lot, the risk to bystanders did not dissipate: "[i]f Defendant's pistol had discharged while he was fleeing, there is no telling where the bullet would have ended up. A .380-caliber bullet fired into the air at the perfect angle can travel well over a mile" and hit a bystander. **Doc. 53 at 2**.

Nonetheless, the inhabitance level of the area Defendant fled from and in—heavily inhabited by civilians or not—is not dispositive. In *Zamora*, the Defendant insisted that "his armed flight, even if reckless, created no substantial risk of death or bodily injury to another person" because "the streets were empty when he fled from law enforcement that night . . . and . . . there were no cars and no officers and no risk for § 3C1.2 to punish." 97 F.4th at 1212 (cleaned up). Nevertheless, the Tenth Circuit held it proper to impose an enhancement under § 3C1.2 because the defendant "created a serious risk of bodily injury to law enforcement." *Id.* at 1213. Indeed, serious risk to law enforcement alone is sufficient for imposing an enhancement under § 3C1.2. Here, even eliding over the fact that Defendant began his flight in a residential area, **Doc. 51 ¶¶ 15–16**, Defendant carried an unholstered, loaded pistol capable of firing, at some point drew the pistol in his hand, and finally abandoned the pistol while running from officers who could have very well been struck by an errant bullet during any part of the chase, ***Id.* ¶¶ 16, 18**. Moreover, Defendant demonstrated a willingness to fire his pistol after he menacingly waved the pistol in John Doe and Jane Does's faces to coerce them into listening to his commands. ***Id.* ¶¶ 14**. Thus,

imposing an enhancement under § 3C1.2 is appropriate regardless of the civilian population in the area given that law enforcement incurred a substantial risk of bodily harm or death because of defendant's reckless conduct. ***Id.* ¶¶ 15–16, 18**.

Furthermore, Defendant's argument that "[t]here is no evidence showing whether [Defendant] placed, dropped, or threw the firearm and consequently no evidence that it was otherwise 'capable of discharging in its condition,'" is both erroneous and misapprehends the facts necessary to apply a § 3C1.2 enhancement. **Doc. 46 at 6** (internal citations omitted). First, the PSR demonstrates that Defendant did not scrupulously place the pistol on the ground: Defendant was in hot pursuit by officers and the pistol was spotted in Defendant's hand during the chase—at no point did the officers observe Defendant stop to carefully place his pistol on the ground; rather, it was found discarded on the ground near the fence which Defendant jumped over to flee the officers. **Doc. 51 ¶¶ 16, 18**. Additionally, the PSR demonstrates that the gun was loaded and capable of firing. ***Id.* ¶ 19** ("The pistol was test-fired and functioned as designed."). Ultimately, the precise manner by which Defendant discarded the gun—whether he dropped or threw it—is a semantics battle that is ultimately inconsequential. As the Tenth Circuit stated in *Zamora*, even if there were "several safety mechanisms designed to prevent against accidental discharges[,] . . . the standard of care" is "of a reasonable person, 'not the reasonable fleeing criminal suspect,'" and a reasonable person would not have run away with an unholstered, loaded pistol or discarded that pistol while officers were in hot pursuit, whether by dropping or throwing it. 97 F.4th at 1211 (quoting *Conley*, 131 F.3d at 1389).

Defendant cites *United States v. Shivers*, 56 F.4th 320, 325, 327 (4th Cir. 2019), for the proposition that where there was no evidence to establish that Defendant reached for the gun or whether he dropped or threw the firearm in such a way to increase risk of discharging, it is an error

to apply a § 3C1.2 enhancement. **Doc. 46 at 5**. For one thing, *Shivers* serves only as persuasive authority. Second, the Tenth Circuit in *Zamora* stated, as several other circuits have, that the record need only demonstrate that the firearm was "loaded and ready to fire such that accidental or intentional discharge was a factual possibility" to support applying § 3C1.2. 97 F.4th at 1212. The record here shows just that. ***See* Doc. 51 ¶¶ 16, 18**. Therefore, even without accounting for Defendant discarding his pistol, Defendant's other conduct—fleeing with a loaded, unholstered pistol and later drawing it, and demonstrating a willingness to fire his pistol—is sufficient to impose an enhancement under § 3C1.2.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Objection (Doc. 46) is hereby **DENIED** for the reasons described in this Memorandum Opinion and Order.

__________/S/______________
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE